Willie, Chief Justice.
The plaintiff below purchased a ticket entitling him to be transported on the defendant’s railroad from Longview to Kilgore, a distance of about twelve miles and a half. He boarded the proper train after exhibiting his ticket to the brakeman, who stood at the door, then placed the ticket in his vest pocket and took his seat in the car. When the conductor came around to collect tickets the plaintiff felt in his vest pocket for it, but could not find it at the moment. While searching for the ticket he told the conductor that he had a ticket and that it was somewhere about his clothing, and to wait a minute or so and he would find it and give it to him. The conductor replied impatiently, “If you have a ticket it need not take you all night to get it; you must get the ticket or get off,” and immediately pulled the bell cord to stop the train. The plaintiff then told him that the brakeman had seen his ticket, arid that he could call his brakeman and ask him. He did not call the brakeman, but again told the plaintiff to get off, remarking at the same time that persons had tried to play that on him before. Plaintiff then offered to pay his fare to the extent of the change tliat he had in his pocket, but this being only forty-five cents and the fare being fifty cents, the conductor would not receive it; and, in spite of the request of the plaintiff to wait a reasonable time for him to find his ticket, the conductor stopped the train and ordered him off, an order which he *621 obeyed, the conductor making demonstrations of using force to carry out his command.
The train then pulled out, leaving the plaintiff in the woods near a water tank, and at a place where there were no residences-The plaintiff, just after the train left, found his ticket, which had slipped through a hole in his pocket and got in next to the lining of his vest. It was about a minute and a half between the time the conductor called for the ticket and the time at which he ejected the plaintiff from the cars. All this occurred after midnight; the night was dark and the place swampy, and the plaintiff, not knowing what distance he was from either Longview or Kilgore, walked back to the former, crossing a railroad bridge over the Sabine river a half mile long, and arriving at Longview about an hour and a half after he had left that place on the train. As a consequence of these facts he became sick, lost two weeks from work and had a doctor in attendance on him. For the mortification suffered by him in being ordered off the train in presence of the other passengers, in manner as stated, and the pain of mind and body, loss of time and expense to which he was subjected by reason of being put off the cars and forced to walk to Longview, he claimed damages to the extent of ten thousand dollars. The jury returned a verdict in his favor for five hundred dollars, and a motion for a new trial having been filed upon the ground among others that the damages found by the jury were excessive, his counsel remitted one hundred dollars, and the court rendered judgment for the balance. From that judgment this appeal is taken.
. It is not disputed by the appellant that the conductor was bound to wait a reasonable time for the plaintiff to produce his ticket, but it is- claimed that he complied with this requirement of the law. This was a question of fact for the jury, and under a charge not complained of, they found it in favor of the plaintiff, and we can not say that their finding is not in accord with the evidence. What would have been reasonable time depends upon the circumstances of the case. The only fact which would have authorized an immediate expulsion of the plaintiff was a positive refusal to produce a ticket or pay fare. There was no such refusal; on the contrary the plaintiff told the conductor that he had a ticket about his clothing and would find it in a minute or two and give it to him. This was a statement of something that might frequently happen; the placing of a ticket in gome part of the clothing where it could not be readily found. *622 If true, and he had the ticket, he was entitled to all the rights of a passenger; if not true, its falsity could soon be determined. The conductor had no reason to suppose it false, for, if the plaintiff intended to ride to the next depot without paying fare, the delay of a few moments under pretence of looking for his ticket would not have furthered his object.
He also offered to prove by the brakeman that he had shown him. his ticket when getting on the car. Whilst the conductor was not bound to receive this as proof that the plaintiff had a ticket, it should have convinced him that his assertion to that effect was in good faith, since, if not true, the brakeman was there to disprove it. But the conductor seems to have treated the statement as false the moment it was made, and the defendant as a trespasser, and to have allowed but little more time to search for his ticket than was consumed in stopping the train and hurrying the plaintiff from the cars. That the latter did have a ticket and would have found it had he been allowed but a moment longer for the search was shown by the fact that he did find it in his clothing immediately after the train moved off, and this occurred so soon as he was ejected. We think the conductor acted too hastily and .the jury were justified in so finding. (Maples v. R. R. Co., 38 Conn., 557; Hayes v. N. Y. Cent. R. R. Co., 18 Am. and Eng. R. R. Cases, 363; Clark v. R. R. Co., Id., 366.)
The second assigned error is virtually disposed of by what we have already said. It complains that the plaintiff was negligent in not being able to produce the ticket^when called or pay the fifty cents demanded.
The third and last assignment is: “The court erred in refusing a new trial, because the verdict is excessive in amount, and the remittitur does not obviate the objection, but confesses it.” Had the remittitur not been entered, and the court had approved the verdict by overruling the motion for a new trial, we could not have reversed on the ground that the verdict was excessive. Taking into view the mortification caused by the several indignities heaped upon the appellee in the presence of his fellow passengers, the mental and physical pain produced by his being left about midnight of a dark night in the woods where there was no one living, and by his long and dangerous walk to Longview, his consequent illness, lasting two weeks, also his losses from inability to labor during that period of time, we can not say that five hundred dollars was too great a compensation. *623 Indeed, this amount seems small as compared with the sums usually rendered by juries in similar cases, and which have been approved both by the nisi prius courts and those of last resort. In Lake Erie & Western Railway Company v. Fixe, 11 American and English Railway Cases, 109, six hundred dollars was held no more than reasonable compensation for less injuries than were suffered by the appellee in this case, the facts of the two cases being much alike. This court, too, in the case of International & Great Northern Railroad Company v. Gilbert, 64 Texas, 536, sustained a verdict of six thousand five hundred dollars, and in International & Great Northern Railroad v. Smith, Tyler term, 1886, sustained one for eight thousand dollars for a transaction and consequent injuries, similar to the present, the principal difference in the cases being that in those the injured parties were females traveling unprotected with young children. There are no circumstances in this case tending to show that the jury were actuated by passion or prejudice in assessing damages. Neither does it appear that the trial judge regarded the verdict as excessive. He did not intimate that he would set it aside if a remittitur was not entered, but this entry was the voluntary act of the plaintiff’s attorney.
These cases, which hold that a remittitur can not be entered where the true amount of damages can not be correctly ascertained from the evidence, rest upon the ground that an excessive verdict shows that the jury did not pay due regard to the evidence, but were actuated by passion or prejudice in coming to their conclusion; and that, to allow a remittitur of a part of the damages, would be to substitute the finding of the court for that of the jury. But where, as in this case, the damages are not excessive, and there is no proof of improper motives on the part of the jury, the rule loses its application, and the court gives judgment for a sum which the jury honestly thought the plaintiff should recover. Nor are the decisions of our State opposed to this view, as supposed by appellant’s counsel.
In Thomas v. Womack, 13 Texas, 580, a case of assault and battery, where the plaintiff recovered ten thousand dollars damages and remitted eight thousand five hundred dollars, the judge refused a new trial on the express ground that the remittitur had been entered, thereby in effect holding that had it not been entered, a new trial would have been granted. In Hardeman v. Morgan, 48 Texas, 103, the remittitur was entered after the district judge had stated that if the defendant would remit the *624 damages recovered by him in reconvention, the motion for a new-trial would be overruled. This court intimated that under the decision in Thomas v. Womack, which was in point, the damages could not be remitted, but declined to make any authoritative decision upon the subject. In Hughes v. Brooks, 36 Texas, 379, and in Heidenheimer v. Shlett, 63 Texas, 395, exemplary and actual damages were mingled and not separated in the verdict. In the latter case, too, the remittitur was suggested by the court. This court there said: “The amount remitted was evidently considered by . the court as exemplary damages embraced in the general finding, and that the court and not the jury estimated the actual damages at the amount remaining after the remittitur was entered. Having held that it was not a case for exemplary damages, and. there being nothing before the court from which the exact amount of each class of damages could be arrived at, it was of course error for the district judge to separate them and say how much actual damages should be recovered.” In Hoskins v. Huling, 4 Texas Law Review, 183, the trial judge held the verdict excessive, and the appellee thereupon remitted off portions of the recovery, and a new trial was ordered. The Court of Appeals held this action unauthorized.
Thus we see that in each of these cases the trial court regarded the verdict originally found as excessive, suggested a remittitur to prevent the grant of, or overruled a motion for a new trial because a remittitur had been entered; or exemplary damages were so commingled with actual damages that they could not be distinguished from each other; so that the former might be remitted and the latter be allowed to stand. Here neither exemplary damages were recovered nor did the court overrule the motion for a new trial, for the reason that a portion of the money had been remitted.
Hence, neither of the other decisions is applicable to the case in hand. But the case of Texas Cotton Press Company v. Crowley, decided at Galveston term, 1886, but not reported, is clearly in point. There a father received damages for the death of his infant child, caused by the negligence of the Press Company, to. the extent of three thousand, five hundred dollars. The plaintiffs attorney voluntarily remitted one thousand, eight hundred dollars of the verdict. The court below refused a new trial, and its action was sustained by this court. It was stated in the opinion that the damages were in some measure conjectural, *625 yet, we said: “Unless the verdict appeared clearly to be the fact that a remittitur was entered would not interfere with the right of the appellee to have a judgment for a less sum than given by the verdict.” And so with this case. The tiff’s original recovery was not excessive, under the evidence, and there is no reason why a judgment for a less sum should be disturbed. If it was the deliberate and unprejudiced opinion of the jury that the plaintiff was damaged in the sum of five dollars, they certainly thought he was damaged to the of three hundred and fifty dollars, so that the finding is at last theirs, not that of the court. The attorney may have through fear that the court would consider the verdict excessive, but the record does not show that this was the opinion of the judge, and wé have no right to attribute such a opinion to him. We find no error in the judgment, and it is affirmed.
Opinion delivered October 18, 1887.
Affirmed.