## No. 2359.

GULF, COLORADO & SANTA FE RAILWAY COMPANY *v.* W. J. COON.

1. DAMAGES.—It is the duty of one who receives personal injuries from the wrongful act of another to use ordinary care and prudence to have himself cured, and he forfeits his rights to recover damages that might have been saved, and which resulted from his own negligence in failing to adopt means of cure.

2. EVIDENCE.—The answers of a witness having been read by one party to discredit another witness the adversary may introduce in evidence the further answers of the witness tending to show his own temper and feeling toward the witness he thus seeks to discredit, and his motives and interest in a former prosecution of the witness, about which he has been interrogated. The inquiry can not extend beyond the witness's own statement of his connection with such prosecution.

3. IMPEACHING A WITNESS.—A witness can not be impeached or contradicted upon matter not relevant to the issue.
4. REMITTITUR.—The trial judge can not overrule a motion for new trial in a a suit for damages for personal injury, on the ground that a remittitur has been entered by the plaintiff, when the motion is based on the fact that the damages awarded were excessive. The judge can not thus invade the province of a jury by measuring the damages for which they should have returned a verdict.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart.

The verdict in this case rendered for appellee was for ten thousand dollars damages. The court having suggested that three thousand be remitted, the same was done, and appellant's motion for new trial based, among other things, on the ground that the verdict was excessive, was overruled.

*Ballinger, Mott & Terry,* for appellant: That the court erred in refusing to give the third special charge requested by defendant, as the same states the correct rule of law defining plaintiff's duty to use reasonable efforts to cure his injury, and erred in not charging the jury that if plaintiff's alleged permanent disability or injury could be removed or cured by an operation, involving no serious cansequences or danger, that it was his duty to have such operation performed, and they should take such fact into consideration in the mitigation of damages; they cited 1 Sutherland on damages, page 148; 3 Id., page 729; Klutts v. Railway Company, 75 Missouri, 642; 11 Id., A. & E. R. Cases, 629; Geiselman v. Scott, 25 Ohio State, 86; Gould v. McKenna, 86 Pennsylvania State, 297.

That the court erred in admitting the evidence of the witness, Webster Snyder, as to the fact of the arrest of witness, W. W. James, on a charge of perjury, alleged to have been committed in a suit growing out of same accident in which this plaintiff was injured, and as to his connection w'th said arrest, his purposes and motives as to the same; they cited Gulf, Colorado & Santa Fe Railway Company v. Levy, 59 Texas, 550; DeLeon v. White, 9 Texas, 598; Waul v. Hardie, 17 Texas, 553; Evans v. Pigg, 28 Texas, 586; Woosley v. McMahan, 46 Texas, 63.

It is not competent to impeach a witness by asking a question upon a collateral matter not relevant to the issue, and then to contradict him by evidence upon the collateral fact. The an-

swer of the witness as to the collateral matter is conclusive, and evidence will not be heard to contradict him; citing Stevens v. The State, 7 Texas Court of Appeals, 39; Gulf, Colorado & Santa Fe Railway Company v. Levy, 59 Texas, 550; 1 Wharton on Evidence, sections 29, 547, 539, 532; 1 Greenleaf on Evidence, sections 52, 449.

*Peyton F. Edwards, George F. Ingraham, F. Charles Hume* and *Seth Shepard,* for appellee: There was no error in allowing the plaintiff to put in evidence that part of the deposition of Webster Snyder not introduced by the defendants; citing Jones v. McCoy, 3 Texas, 353; Wentworth v. Crawford, 11 Texas, 132, 133; 1 Greenleaf on Evidence, sections 446, 53; Id., note 2, section 448, citing Reg. v. Overton, 2 Mod. Cr. Cas., 263; Winston v. Cox, 38 Alabama, 274, 275, citing 1 Greenleaf on Evidence, section 449; Commonwealth v. Lyden, 113 Massachusetts, 452.

It was competent for plaintiff to enter the remittitur. (Rev. Stats., arts. 1351, 1357.)

COLLARD, JUDGE. This suit grows out of a wreck that occurred on the Gulf, Colorado & Santa Fe Railway on the twenty-second of April, 1884, north of Rosenberg, near Kinney. The wreck occurred at a curve in the road while the passenger train was going north. Two coaches left the track, and the one in which the plaintiff was riding rolled down the embankment, breaking or fracturing two of his ribs, bruising his hip so that risings were caused, and injuring his knee cap, crushing a part of it. At the time of the trial plaintiff had recovered from all the injuries except his knee, where there was a running sore or ulcer originating from dead bone of the knee cap. The defendant complains by assignment of error of the refusal of the court to give a special charge asked, to the effect that if plaintiff's knee cap could have been cured by having an operation performed, which would not have been dangerous, it was his duty to do so, and that he would only be entitled to recover for suffering up to the time he could have been cured.

The court instructed the jury that if plaintiff, by his own negligence, after receiving his injuries, aggravated them, he could not recover for the aggravated injury, * * and that it was the duty of plaintiff to use ordinary care and prudence to cure his injuries as speedily as practicable, considering all the circumstances around him, and if he was negligent in his duty

he would be entitled only to such damages as he would have sustained had he so performed his duty.

The evidence of experts was conflicting as to the expediency and result of an operation removing the dead bone in the knee cap, some contending that it was indicated and ought to be done, and the sooner done the better; that when done the issue would stop and the wound heal, but the knee would be weakened; others declared in favor of conservative surgery, that is, to give it a chance to heal itself if it would, and that an operation might result in a stiff joint or necessitate amputation of the leg.

It was the duty of plaintiff to have had an operation performed on his knee if it could have been done without danger and with assurance that it would be beneficial. He was only required to act as a man of ordinary intelligence and prudence would have acted under the circumstances. (Rents v. Railway, 75 Mo., 642; 1 Sutherland on Damages, 148.) It seems his right to damages was such as he would have been entitled to if he had done his duty in respect to the operation. The charge of the trial judge contained the principle stated above and contended for by the appellant, and was as definite and explicit as it need have been. It did not specify an operation as a means of cure, but stated the proposition that it was plaintiff's duty to use ordinary care and prudence to cure his injury, and that negligence in so doing would forfeit his right to damages that might have been saved by adopting a proper means of cure. We think the charge of the court sufficiently explicit and that there was no necessity to give the special charge asked.

The ruling of the court assigned as error in admitting evidence of Webster Snyder to show his connection and motives in the arrest and prosecution of James on a charge of perjury is a more difficult question.

It seems James was charged with perjury by one Spillane, alleged to have been committed on the trial of Doctor Fly's case against the company on account of the same accident on the road that gave rise to this case. James testified, as in this case, that he was at Rosenberg the morning of the accident, and while Rush and Rasch were inspecting the train, he, James, who was inspector for another road, discovered a loose wheel on the rear truck of the rear coach, and called Rush's attention to it. Rush and Rasch both deny this, and say he was not there at all. Spillane and Terry (the latter attorney for the road), went to Snyder,

the general manager of the road, and laid the facts before him, in order to get his opinion as to whether James should be prosecuted for perjury, attorney Terry telling him a conviction ought to be had. Spillane, who was to make the affidavit, hesitated to do it without consulting Snyder. Snyder said he had no objection; the affidavit was made in Galveston, and James was prosecuted.

Snyder gave Spillane the use of defendant's road to bring the prosecuting witness to Galveston where the prosecution was pending. All these facts appeared in depositions of Snyder, and the evidence was objected to by defendant. Defendant had previously read a portion of Snyder's direct evidence in the same depositions, in which Snyder says, after the accident, and before the arrest, James came to Galveston, and in an interview with witness in his office, told him about his, James's, discovery of the loose wheel at Rosenberg, before the accident, and his calling Rush's attention to it. Snyder then says in his evidence that James told him that he, James, did not wish to testify against the company, and then asked Snyder for a position on the road—James having been discharged from the service of the road he had been employed on. Snyder refused the request, referring James to the master mechanic. James then asked for a return pass to Rosenberg, and this was also refused. After defendant read so much of the evidence it rested, and plaintiff read the evidence objected to.

We are not prepared to say the evidence was inadmissible. Snyder's depositions had been used in part by defendant to show that James intimated he would make a dishonorable and corrupt bargain with Snyder for the road. After this we think the plaintiff could read the rest of the same witness's depositions to show his temper and feeling towards James, and his motives and interest in the prosecution. The inquiry could not be extended further than his own statement of his connection with the prosecution; his answers were filed, and ended the investigation of the matter, which was disconnected with the main issue. (1 Greenleaf on Evidence, 446, 449, and note 7; 1 Wharton on Evidence, 408, 544; Wentworth v. Crawford, 11 Texas, 132, 133.)

We think there was error in admitting the evidence of J. H. Crowly to impeach and contradict Snyder as to whether Snyder was informed that the cause of the wreck was a loose wheel, and as to whether Crowly showed him a telegram from an employe

ascribing it to a loose wheel. Snyder says he was not so informed, and did not see the telegram. Crowly swears to the contrary. The attempted impeachment was upon an immaterial issue. The issue was: Was the wreck caused by a loose wheel? If not, was Snyder informed that it was caused by a loose wheel? A witness can not be contradicted or impeached upon irrelevant matter. (1 Greenleaf on evidence, 449.) There was error in admitting the evidence over defendant's objection. As the case will be reversed for the error just pointed out, we do not deem it proper to express our opinion as to whether the verdict was excessive. The trial judge concluded that it was excessive, as he required plaintiff to enter a remittitur of three thousand dol_ lars as a condition to his overruling the motion for a new trial. If the judge was of opinion the verdict was excessive he should have granted a new trial. The damages are assessed by the jury; if the verdict is excessive the judge, in actions like this, has no measure by which to determine how much it is excessive; his attempt to do so is an invasion of the rights of the jury. His only course in such a case is to grant a new trial. We do not find the remarks of counsel were calculated to, or did, prejudice the jury.

It is unnecessary to notice other matters complained of as to conduct of the jury, as they will doubtless not occur again. The cause is reversed and remanded for a new trial.

*Reversed and remanded.*

Opinion adopted February 7, 1888.