GULF, COLORADO & SANTA FE RAILWAY COMPANY v. LOUIS
REDEKER.

No. 2653.

1. **Employment of Minor in Dangerous Work.**—Where one knowingly engages a minor in a dangerous employment without the father's consent, and the minor is injured in such employment, he is responsible to the father for any consequent loss. of the son's services.

2. **Father's Consent.**—Where the parents live together the mother's consent, not ratified by the father, will not relieve the employer of the son from liability in such dangerous employment.

3. **Fact Case.**—See facts which are held insufficient to show authority in the mother to consent to her son's employment by a railway company.

4. **Consent of Father.**—A general consent by the father that his son should follow railroading would not authorize a railway company to employ the son and place him upon more dangerous work than he was at first engaged in after the employment.

5. **Duty of Railway Before Employing Minor.** — It is not the duty of the father to give the employing company notice of his opposition to the employment of his son. The company should obtain the parent's consent, his minority being known.

6. **Remittitur.**—See facts where a verdict was sustained after the plaintiff had entered a remittitur of a part of the amount. See mode of computing damages.

APPEAL from Tarrant. Tried below before Hon. R. E. Beckham.

This is a second appeal. The first is reported in 67 Texas, 190. The opinion and the report give a sufficient statement.

*Shepard & Miller,* for appellant.—The court erred in refusing to give to the jury the special instruction asked by defendant, to the effect that plaintiff could not recover if his son had been in the railway service, and had left home to seek railway service by his mother's consent, and that no notice was given to the defendant that he was not permitted to take employment as a brakeman. Blanchet v. Dugat, 5 Texas, 507, 509; McAfee v. Robertson, 41 Texas, 355, 358; Wright v. Hays, 10 Texas, 130; Wodell v. Coggeshall, 2 Metc., 89; Church v. Landers, 10 Wend., 79; Booth v. Cotton, 13 Texas, 359, 363; Cheek v. Bellows, 17 Texas, 613; Redeker v. Railway, 67 Texas, 190; Whiting v. Earl, 3 Pick., 201.

*Wm. McLaury* and *Ball & McCart,* for appellee.

COLLARD, JUDGE.—This action was brought by the appellee Louis Redeker for loss of services of his minor son J. W. Redeker, expenses, etc., resulting from an injury received while the minor was engaged as an employe of the Gulf, Colorado & Santa Fe Railway Company on a construction train in the capacity of a brakeman.

On the former appeal of the case the court, Mr. Justice Gaines delivering the opinion, laid down the following propositions of law: He said, " There can be no question that if the injury was the result of negligence, as alleged in the petition, the father was entitled to a judgment for loss of service and incidental expenses accruing from the injury. I. & G. N. Ry. Co. v. Miller, 49 Texas, 322. We are also of opinion that where one knowingly engages a minor in a dangerous employment without the father's consent, and the minor is injured in such employment, he is responsible to the father for any consequent loss of the son's services to him. This is the rule when the minor is employed by another with the parent's consent, and without such consent is put by his employer at a more dangerous business and thereby receives an injury, the father may recover, and we see no reason why one less stringent should be applied in case the minor is knowingly engaged in a perilous occupation in the first instance against the parent's will." 67 Texas, 191.

The case was reversed and sent back for another trial on the ground

that it did not appear from the testimony that defendant knew that the son was a minor, or that it ought to have been known from his appearance. On the last trial this evidence was supplied to this extent, that the fact was made known to the conductor before the injury—the conductor who had employed him, under whom he served, and who had authority to employ and discharge such employes of the company.

On this appeal other questions are at issue. It was shown on the last trial that the father, plaintiff, was only occasionally at home; was employed as engineer on the same road, running between his home at Fort Worth and Temple; came in to Fort Worth in the evening and would go right out again, lying over at Temple; stopped in Fort Worth just about long enough to go home; came in sleepy and would lie down. Under these circumstances, the father being absent, young Redeker, by his mother's permission, left home to get a position on a railroad (had been idle about six weeks), having been by his father's consent previously at work as a fireman on the "T. P." road, both parents having consented that he should follow railroading for a living. He went to Houston and was employed by defendant's agent as a wiper or watchman, and was in a few days put to work as a brakeman on a construction train. While employed as a watchman he wrote his mother of the fact, but she did not know the character of his work had been changed. His father did not consent to his taking employment with defendant at all. He says he did not know where he was or what he was doing, but his wife testified that when "he came home and found John had gone to Houston into the railway service, he was not to say angry, but he didn't like it."

The defendant asked the court to charge the jury that if the son went away from home with his mother's consent to enter into railway service, and no notice was given to defendant that he was not permitted to take employment as a brakeman, the plaintiff could not recover. The court refused to give the charge, and in the general charge informed the jury that the father's consent to the employment was necessary. The court also told the jury that if he entered upon the service of defendant with his mother's consent, and his father was informed of it and of the character of service he had taken, and then consented to or acquiesced in it, the verdict should be for defendant. The refusal of the court to give the requested charge is assigned as error. Appellant argues that the mother's consent was sufficient authority for defendant to employ the minor. If this is correct, the case must be reversed, because the court made the right to recover depend on the father's consent or acquiescence. We can not agree to the legal proposition contended for by appellant.

In case the husband abandon the wife and the necessities of the family demand it, she can act as a *feme sole* in the management and disposition or sale of the community property. Wright v. Hays, 10 Texas, 135; Cheek v. Bellows, 17 Texas, 617; Fullerton v. Doyle, 18 Texas, 12; Mc-

Alpin v. Robertson, 41 Texas, 358; Lodge v. Leverton, 42 Texas, 20; Heidenhiemer v. Thomas, 63 Texas, 289.

These authorities are cited in support of the doctrine contended for by appellant in this case, but an examination of them will show that two things must concur to give the wife the power to sell the community property:

1.   There must be an abandonment by the husband of the wife of a permanent character, or such desertion or protracted absence as leaves to her the necessary responsibility of maintaining the family.

2.   The necessity must exist to require the exercise of the power.

Under the facts of this case it will be seen at once that this principle can not be invoked to authorize Mrs. Redeker to act independently of her husband, if the question were one of her right to sell or charge community property; however, we do see from these cases that there are circumstances under which the wife may from necessity become the managing head of the family, and may so act without the concurrence of her husband.   The husband is by law the managing head of the family, except in extreme cases.   At common law he has the right to the custody of the children, except in cases of misconduct or where the welfare of the child demands that such custody be taken from him and given to the mother, in which case the courts of proper jurisdiction will so direct.   Shoul. Dom. Rel., secs. 246–48.

Where the parents live together the father under our statute is made the natural guardian of the persons of the minor children; where they do not live together their rights are equal.   Rev. Stats., arts. 2494, 2495.

The status of the father in the family is then fixed beyond controversy by our statute.   As natural guardian of the children he has the right to their custody and control.   We think that his authority and dominion are exclusive, at least to the extent that in general in all matters of such importance that the consent of the parent is required to legalize or justify an act or transaction with or concerning a minor, and the parents are living together, the consent of the father is required, and the consent of the mother will not suffice.   There are no facts in this case that should make it an exception to the rule.   The parents were living together; the father was necessarily absent from his home the most of his time following his occupation of engineer, but stopping at home when his business did not call him away.   We do not see any fact in the case that would change his ordinary relations with his family or affect his rights and privileges with them.   Hence we conclude that Mrs. Redeker's permission to her son, if it had been full and complete, that he could take employment with defendant as a brakeman on a construction train, did not justify defendant in making the contract or in retaining the minor in such employment after information that he was a minor.   When it was ascertained that he was a minor it was the duty of defendant to obtain the

father's consent.   Defendant's agent who employed the minor and had authority to discharge him knew his father and had been at his house; he took the risk for his company when he retained the son in his employ without the father's consent after notice of the fact of minority.

By general permission plaintiff had consented that his son could follow railroading for a living, and had consented to his employment on another road as fireman.   But it was in proof that firing was not as dangerous as braking, and that braking on a construction train was more dangerous than on a completed road.   He had the right to direct his son in taking employment, and to select the kind of employment he should take; he had done so in the instance given.   The general permission that he could follow railroading for a living did not deprive the father of the right of specifying how and where he should work.

Had the father actually consented that his son could be employed by defendant as a wiper, a watchman, or a fireman, and without his consent defendant had changed the employment to the more hazardous one of braking on a construction train, the change would have been at the peril of the company.

Plaintiff was not required to give defendant notice that his son was not permitted to serve as a brakeman.   It is not shown that plaintiff knew he was in defendant's employ, and if he did, it was not his duty to give the notice.   If plaintiff knew of the employment of his son as a brakeman, and acquiesced in it, his acquiescence would be equivalent to consent. The court instructed the jury that this was the law, and that if they should find such acquiesence the plaintiff could not recover.   We think this was all that was required.   The case did not call for a charge of notice to defendant.

In the opinion on the former appeal of this case the court said:   "If the employer knows of the minority it is his duty to ascertain whether the infant have a parent, or be an apprentice, and if so to obtain the consent of such parent or the master before making the employment."   67 Texas, 192.   While the plaintiff may consent by acquiescence, no notice to defendant is required if defendant have knowledge of the facts.   Defendant must obtain the consent of the parent.

The verdict was "for $3032 damages and $826 interest."   Pending the motion for new trial plaintiff entered a remittitur for all the judgment but $2100, when the motion for new trial was refused.   Defendant claims that the court erred in overruling the motion for a new trial on the ground that the verdict was excessive, and that after plaintiff had remitted he was entitled to a new trial, because he was entitled to a verdict of a jury as to the amount due, and the effect of the court's action in accepting the remittitur of the excess was to deprive defendant of a trial by jury.

In support of this assignment of error we are cited to the case of Gulf,

Colorado & Santa Fe Railway Company v. Coon, 69 Texas, 730. That was a suit for damages for injuries to the person, and it required the intervention of a jury to estimate the damages, which were left to a great extent to their sound judgment and discretion. It was held that the law in such cases furnished no measure by which the court could determine how much of the verdict was excessive.

In Thomas v. Womack, 13 Texas, 585, the correct rule is given as follows: "Where the law recognizes some fixed rules and principles to regulate the measure of damages by which it may be determined in how much the verdict is excessive, as in actions on contracts and for torts done to property the value of which may be ascertained by evidence, a remittitur of the excess may be received in answer to a motion for a new trial on the ground of excessive damages."

Where the verdict of a jury is required to fix the amount of damages, and they fix them at an excessive amount, neither the court nor counsel can tell how much should be deducted to make the verdict a proper one, because the jury alone has the right to fix such uncertain damages. In this case there was evidence showing a proper account between the parties, the principles of which are fixed by law. It was proved that the father lost 22 months wages of his son, and that these wages were of a certain value, at least $60 per month, and that the father got from his son before he was hurt $40 to $50 per month—say $40—which would for 22 months be $880. The trip to Houston cost the parents $29; they paid out for him at Houston $49; the father was receiving $75 to $80 per month at the time of the injury, which he lost for six months while necessarily waiting on his son—say $75, the least amount proved; he had to pay out at least $300 for medicines and medical attention after his son was removed from the hospital to Fort Worth; his mother nursed him 18 months, and it was shown that a nurse would have cost $2 per day, or $60 per month—$1080 for the item of the mother's nursing, of which if one-half only be allowed the item would be $540. All of these items of expense, loss of time, and outlay were necessary, and would not have occurred but for the injury. So we see that the verdict might have been for at least $2248, and that the evidence furnishes the means of ascertaining the amount at the lowest estimate. The remittitur was for $148 more than was necessary; plaintiff remitted more than could have been demanded. We do not see that for that reason the verdict so reduced should not be allowed to stand.

Our conclusion is, the court did not err in refusing a new trial because the verdict was excessive, or because an amount of it was remitted, since the evidence is conclusive that at least the amount for which judgment was entered was clearly authorized by the evidence.

We conclude the judgment of the lower court should be affirmed.

Adopted December 3, 1889.                                    *Affirmed.*