C. L. NUNNALLY ET AL. v. EDWARD TALIAFERRO.

No. 3251.

1.  **Remittitur, When Allowed.** — Where the measure of damages is regulated by recognized principles of law by which it may be determined to what extent the verdict is excessive a remittitur may be allowed.

2.  **Same—When not Allowed.**—But where the excess in the verdict is not ascertainable by any rules of law, is uncertain, and considerable, a remittitur should not be permitted.  See example, being damages for slander.

3.  **Practice—Remarks of Counsel.**—Where there is evidence of undue influence upon the jury, as by inflammatory remarks of counsel, apparent animosity on part of jury against the losing party, followed by a verdict for excessive damages, a new trial should have been granted.

4.  **Verdict—Practice.**—In an action lying in uncertain damages a judgment should not be entered upon a verdict reduced by entry of a remittitur, where the original verdict is excessive.

5.  **Verdict Excessive.**—Verdict for $24,000 actual and $8000 vindictive damages held excessive in action for libel or slander.

APPEAL from Rusk.  Tried below before Hon. JOHN R. ARNOLD, Special District Judge.

The opinion states the case.

*J. H. Wood* and *W. J. Graham*, for appellants.—1.  Where the jury through passion or prejudice give a verdict for a larger amount than asked by the petition, it is the duty of the court to set it aside.  Rev. Stats., art. 1327; Barnette v. Hicks, 6 Texas, 352; Thomas v. Chapman, 62 Texas, 193; 2 Ct. App. C. C., sec. 151; Railway v. Dorsey, 66 Texas, 148; McGehee v. Shafer, 9 Texas, 23.

2.  Where the jury go to other sources than the charge of the court for instruction, or arrive at their verdict by chance, they are guilty of such misconduct as requires their verdict to be set aside.

As to chance verdict:  Wood v. The State, 13 Texas Ct. App., 135; Hunter v. The State, 8 Id., 75; Warren v. The State, 9 Id., 619; Lev-

erett v. The State, 3 Id., 213; John v. The State, 27 Texas, 758; Brennan v. The State, 33 Texas, 266; Little v. Birdwell, 21 Texas, 597.

As to other misconduct: Beazley v. Denson, 40 Texas, 416; Wharton v. The State, 45 Texas, 2; Anshincks v. The State, 6 Texas Ct. App., 524; Dansby v. The State, 34 Texas, 392; Vose v. Muller (Neb.), 36 N. W. Rep., 583.

3. Where an excessive verdict is found on unliquidated damages, the measure of damages is not a matter of law, and it is the duty of the court to set it aside. The error can not be cured by reducing the amount to what the court thinks is not excessive. Heidenheimer & Co. v. Schlett, 63 Texas, 394; Hardeman v. Morgan, 48 Texas, 103; Thomas v. Womack, 13 Texas, 580; Haskins v. Huling, 2 Ct. App. C. C., sec. 156; Railway v. White, 55 Texas, 251.

No brief for appellee reached the Reporter.

HOBBY, PRESIDING JUDGE, *Section A.*—The appellee, Edward Taliaferro, brought this action of slander and libel against C. L. Nunnally, Benj. Blanton, L. C. Cunningham, and N. R. Bagley. The three first mentioned, it was alleged, constituted a mercantile firm in the town of Henderson, Texas, known as Blanton & Nunnally, and of which firm Bagley was an employe. The petition states substantially that appellee had been employed by said firm as its bookkeeper, in which capacity he served for about two years; that defendants, conspiring together for that purpose, uttered and published charges against him to the effect that he had embezzled and stolen the money of said firm.

For injury to his reputation as a business man, and loss of time in being compelled to leave his home in Florida and return to Henderson to answer this charge, and expenses for transportation therefor, he claims damages in the sum of $30,000; for the humiliation and mental agony arising from the accusation made by defendants he claims $5000; and he also asks for exemplary damages in the sum of $5000 for the alleged malicious publishing of said slander.

There were numerous special exceptions to the original petition which it is not important to notice.

Defendant Cunningham denied under oath that he was a member of the firm. The other defendants denied having uttered and published the alleged slanderous language, and that if they did they had reasonable grounds for believing it to be true.

The trial resulted in a verdict for the appellee against the appellants C. L. Nunnally and N. R. Bagley for the sum of $24,000 actual damages and $8000 exemplary damages. The jury found also in favor of the defendants Benjamin Blanton and Cunningham.

Appellee's counsel in the court below remitted all of the exemplary damages and $14,000 of the actual damages. Judgment was thereupon

entered up against the defendants Nunnally and Bagley and in favor of plaintiff for the sum of $10,000. This judgment is appealed from.

There was evidence substantially as follows: That appellee, from about April, 1882, until December, 1885, was the trusted bookkeeper of the firm of Blanton & Nunnally, in Henderson, Texas. He stood well, was popular in the community, and possessed the confidence in a great degree of the defendant Nunnally, who appears to have been the active managing member of the firm. Appellee represented his father-in-law, who resided in Virginia, to be quite wealthy, and that he was in easy circumstances. In December, 1885, he, to the regret of his employers, moved to Florida for the purpose of establishing a home there, stating that he expected to locate at Ocean City. He located, however, at De Land, in western Florida. It appears from the evidence that shortly after his departure from Henderson defendant Nunnally and N. R. Bagley, an employe of the firm, discovered, as they claimed from entries made by plaintiff in the books of the firm, that he was a defaulter in large amounts. These entries they claimed could only be accounted for upon the theory that plaintiff embezzled large sums of money belonging to said firm. At any rate, these entries formed the basis for the charges made by them against plaintiff.

Letters written by the defendants named to plaintiff's wife and his father-in-law set forth in detail the alleged defalcation of plaintiff, established, as they insisted, by the entries in the books of the firm kept by him. There was evidence that they had stated publicly that he had embezzled the money of his employers.

Criminal proceedings were instituted against plaintiff, and Bagley was sent by Nunnally to Florida for the purpose of arresting plaintiff or of inducing him to return without arrest and explain the condition of the books satisfactorily. It was shown that Nunnally offered plaintiff $1000 if he would voluntarily return and do so. Plaintiff started to return to Henderson with Bagley, with the understanding that the latter should defray his expenses. They separated on the way back, plaintiff claiming that Bagley got lost from him in the crowd, and he had to work for money to defray his expenses. Bagley testifies that plaintiff eluded him at New Orleans. Some weeks after, plaintiff appeared in Henderson. He surrendered to the officer, sharing the reward received by the latter for his arrest. He knew he had been offered $1000 to return voluntarily.

A committee selected by the parties commenced an examination of the books formerly kept by plaintiff. It is difficult to understand from the array of figures contained in the sixty pages of the testimony of this committee all of the facts they establish relevant to this action. But it does not appear that they agreed to report that there was or was not any defalcation. But there were many inaccuracies. It appears that no explanation was made by appellee, though he had the opportunity.

We find no testimony of any character authorizing a judgment against Blanton and Cunningham.

Several assignments of error assail the verdict of the jury on the ground that it was influenced by passion and prejudice or other improper motive on the part of the jury, and is excessive in amount; and that the court erred in allowing the appellee's counsel to enter a remittitur and permitting the judgment to remain for the sum of $10,000.

The well settled rule upon the subject of a remittitur is substantially, that where the measure of damages is regulated by recognized principles of law by which it may be determined to what extent the verdict is excessive, as in actions on contracts and for torts done to property, the value of which may be ascertained by proof, a remittitur of the excess may be allowed. But where this excess is not ascertainable by any rules of law, and "the excess is uncertain and considerable," it should not be permitted. Thomas v. Womack, 13 Texas, 584. In a case like this, the discretion of the jury and their sense of right and justice as applied to the facts is the only guide the law furnishes for the measure of damages. This discretion, whether legally and wisely exercised or abused, is ascertained from their verdict alone. If, then, a remittitur be allowed and judgment is entered not predicated on that verdict, but for a different sum, can it be said that the judgment for damages is that ascertained and reached by the discretion of the jury and their sense of right and justice under the facts? Unquestionably not.

Concede that the evidence authorized a verdict for plaintiff for damages, how was the court to determine the amount of such damages, after deciding that the verdict was excessive and allowing the remittitur? It could only be determined by the court's own construction of the testimony; or in other words, the amount permitted to remain would be that which the court's discretion and sense of right and justice under the facts, recognized as being the proper measure of damages. This would manifestly be the substitution of the court's opinion for that of the jury, and necessarily a trial of the cause exclusively by the court. Thomas v. Womack, 13 Texas, 585; Railway v. Coon, 69 Texas, 730.

There are disclosures made by the record sustaining the charge that the verdict was influenced by passion and prejudice or other improper motives. It will be noticed that the prayer of plaintiff was for only $5000 exemplary damages, and yet the jury assess it at $8000 ($3000 in excess of the amount asked).

It appears also that the counsel for appellee stated in his remarks to the jury, "that plaintiff wanted a large verdict, not because he thought he could get it, as defendants were insolvent, but because he wanted it to stand on the record of the court as a vindication. That plaintiff had always wanted a trial—that for four years he had been trying to get one—but was always delayed by the machinations of defendants.

\* \* \* And that defendants had tried to suppress testimony material to plaintiff's case."

A bill of exceptions was reserved to these remarks, on the ground that there was no evidence authorizing them. The court, it is true, instructed the jury orally and in writing to disregard all remarks of counsel made during the trial and not pertaining to the facts.

It is made to appear also that the jury returned into court after a brief deliberation and propounded to the court the inquiry whether, if they "found a conspiracy existed to slander plaintiff, of two out of four, could they find against the third separately?"

These circumstances, taken in connection with the extraordinary amount of the verdict itself ($32,000) and the unusually large sum remitted ($22,000), show that it was so flagrantly excessive that it must be ascribed to some undue influence, passion, or prejudice which perverted the judgment and discretion of the jury. Thomas v. Womack, supra. Such being the character of the verdict, under the well recognized rules it can not stand as originally rendered. Again, it can not stand, as the judgment was entered for $10,000 after the remittitur, because it would not be the verdict of the jury.

We think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*