### WESTERN UNION TELEGRAPH COMPANY v. J. A. J. BRADFORD.

Decided November 21, 1908.

**1.—Telegraph—Market Reports—Gaming Transaction.**

In a suit against a telegraph company upon its contract to furnish plaintiff correct reports of the Chicago grain market, the damages sought being for losses in the purchase and sale of grain for future delivery caused by incorrect reports of the market being furnished, the evidence is considered and held sufficient to support a conclusion that such transactions contemplated the actual purchase and delivery of the grain, and not a mere gaming agreement, and to support a recovery by plaintiff.

**2.—Contract—Quotation of Market Reports.**

An undertaking by a telegraph company to furnish plaintiff correct market reports imposed an absolute duty, and the right to recover for a breach of such contract by furnishing incorrect ones was not dependent on the establishment of negligence with respect to such reports.

**3.—Measure of Damages—Contract on Faith of Information Furnished.**

Where plaintiff made contract for purchase of grain on the faith of incorrect information furnished him by defendant who had contracted to correctly advise him, the measure of plaintiff's damages is the difference between the erroneous price quoted by defendant and the correct or real price on that date and market. Neither the difference between the amount paid on faith of the erroneous information and the price at which plaintiff had contracted to sell the grain, he having bought it to fill such contract, nor the difference between the amount plaintiff paid for the grain to fill his contract and the lowest amount for which he could have purchased same on other dates in time to fill his contract, could be considered in measuring his damages.

**4.—Same—Harmless Error.**

A charge giving an incorrect measure of damages was not ground for reversal where the judgment recovered by plaintiff thereunder was for a less amount than he would have been entitled to recover under a correct instruction.

**5.—Argument of Counsel—Reading Decisions.**

No error appeared from a refusal of the trial court to permit counsel to read to the jury, on the question of what would constitute a gaming contract, a decision of the United States Circuit Court of Appeals from an unofficial report.

Appeal from the District Court of Nolan County. Tried below before Hon. James L. Shepherd.

*G. B. Harness, W. K. Homan, N. L. Lindsley* (Geo. H. Fearons, of counsel), for appellant.

*Beall Bros. & McDugald* and *J. F. Eidson,* for appellee.

PRESLER, ASSOCIATE JUSTICE.—This suit was brought by the appellee, J. A. J. Bradford, for damages for an alleged breach of contract made by appellant, the Western Union Telegraph Company, with him, by which the appellant agreed to furnish appellee from time to time at Sweetwater, Texas, correct reports of the Chicago grain market. Appellee alleged that prior to January and February, 1903, at which time the contract was in effect, the plaintiff had made a contract with the defendant, and the defendant had so contracted with the plaintiff, that the defendant would, for a fee of five dollars a week, furnish to plaintiff daily the Chicago market reports over its lines, of wheat, corn and oats, such reports to be the correct market reports of such grain. That said contract was to continue until notice to discontinue should be given by one of the parties thereto. That plaintiff was on the 3d day of February, 1903, as he had prior thereto, complying on his part with said contract, and was paying said fees of five dollars per week for said services on defendant's part, said contract being then in full force and effect; that the plaintiff has no copy of said contract, and can not give a better description of same. That on or about January 28, 1903, plaintiff, through his agent, the Donovan Commission Company of St. Louis, Mo., contracted for the sale upon the Chicago market, for May delivery thereafter, ten thousand bushels of oats and forty thousand bushels of corn, and on the 2d day of February, 1903, he made a like contract sale of ten thousand bushels of wheat, in which contracts the plaintiff had the option of delivering said grain at any time prior to May 31, 1903; that plaintiff paid to his said agents on said contracts the sum of $600, besides their commission of $150; that the price for which plaintiff had contracted to sell said commodities, and which he was to receive for same, was 35¼ cents per bushel for oats, 77⅜ cents per bushel for wheat, and 43⅞ cents per bushel for corn; that prior to May 31, 1903, the prices on said commodities had greatly declined, which decline occurred about in the month of March, 1903, and during which such decline the plaintiff could have purchased on the Chicago market said grains at the following prices, viz.: Wheat at 71½ cents per bushel, corn at 42⅜ cents per bushel and oats at 31¼ cents per bushel, which would have given plaintiff on his said contract a net gain and profit of $1,937.50; that on February 3, 1903, the defendant purported to be acting under said contract with plaintiff, which said contract was then in full force and effect, delivered to plaintiff telegraphic quotations of the Chicago market of said commodities, which such quotations were as follows: Wheat 74⅜ cents per bushel, corn 43⅛ cents per bushel, and oats 32⅝ cents per bushel, and upon receipt of said quotations plaintiff requested the defendant to have the same repeated over its lines so as to be sure that same were correct, and the defendant having done so, and reported to plaintiff that such quotations were correct, and the same being much lower than the said prices which plaintiff had contracted to deliver said commodities for, he, the plaintiff, relying upon the said

quotations of the Chicago market so furnished him in Sweetwater, Texas, by defendant, as alleged, he at once instructed his said agents in St. Louis to close his contracts by purchasing the grains and filling same; that said market quotations so furnished plaintiff by said defendant were incorrect and erroneous, for plaintiff shows that the prices of said commodities on the Chicago market at that time were as follows: Wheat $78\frac{7}{8}$ cents per bushel, corn $44\frac{5}{8}$ cents per bushel, and oats $36\frac{1}{4}$ cents per bushel, which said market price plaintiff's said agents had to pay for said commodities at the time he so instructed them to close his contract as stated; that by reason of said false quotations of said market prices so made to plaintiff as alleged, the plaintiff was induced to purchase said commodities at an actual loss of $1,150 on the price he had contracted to furnish said grain at in fulfilling his said contracts. Plaintiff says that if he had not been misled by the erroneous quotations of the said market prices of said grains, as furnished him by the defendant, he would not have so instructed his said agents to fill his contract, and that he would have thereafter been able to have availed himself of the said decline in the market values of said commodities, and that he would have then, upon said cheaper market, have bought his quota of grain to have filled his said contracts, and would have thereby been able to realize, and would have realized, a profit of $1,937.50 on his said contract; therefore the plaintiff has been and was actually damaged by reason of said false and erroneous quotations of said market prices in the full sum of $1,937.50.

Appellant answered by general demurrer and special exceptions, which it is not necessary to here set out, as appellant assigns no error upon the action of the court overruling the same, and further specially answered that, if plaintiff sustained damages as alleged in his petition, the same were caused by the negligence of plaintiff in failing to instruct his agents, the Donovan Commission Company, at what price they should purchase grain on his account, and in failing, after he had been notified by said agents that they had purchased said grain at a higher price than he intended to pay, to take any steps to lessen the amount of his damages; and further, to the effect that if any loss had been sustained by appellee, as alleged, the same accrued and resulted from certain gambling transactions, to wit, speculations in futures between plaintiff and other persons unknown to defendant, in which there was no intention to deliver any grain, but in which it was intended by the parties that only margins, or the difference between the contract price and the market price of grain should be paid, and that said transactions were in violation of law and of good morals and public policy; and further, to the effect that if any contract was made with plaintiff by which he was to receive quotation of market reports, the same was made by the Gold & Stock Telegraph Company, and defendant was not a party thereto, but acted with reference to such contract only as agent of said Gold & Stock Telegraph Company and of plaintiff to consummate said contract between the parties, and to collect the charges therefor for said Gold & Stock Telegraph Company; that appellant is not, and was not at the date set out in plaintiff's petition, engaged in the business of gathering or furnishing market reports, but is confined by its charter to the transmission of telegraphic messages for the public for hire, and that if any

contract, as alleged, with plaintiff was made in the name or on behalf of appellant, the same is ultra vires, and was made without authority from appellant; and further, to the effect that plaintiff should not recover under said contract the damages claimed by him, because it appears from his petition that he seeks to recover in this suit for alleged erroneous market reports delivered to him under said contract by appellant, and said contract was made and entered into at a rate greatly less than the usual and customary rate charged by appellant for the transmission of telegraphic messages between St. Louis and Sweetwater, Texas, and that in consideration of which reduction, and of the difficulty of securing at all times accurate reports of the market, plaintiff expressly agreed in said contract that the telegraph company should not be pecuniarily responsible for the accuracy of such quotations and reports, nor for errors, delay or omission in the service; and further, to the effect that if any such contract was made the same was made to enable plaintiff to engage in gambling transactions and in furtherance of wagers and future transactions in grain, with no intention of actual delivery of grain or other commodities, and is null and void as against public policy and morals. Plaintiff filed a first supplemental petition demurring to appellant's answer, and denying generally the allegations of fact relied on by appellant in its special answers, and further pleaded that if the contract made with plaintiff was executed by the Gold & Stock Telegraph Company, as a matter of fact the appellant was the agent of said company, or that appellant and said company were one and the same company.

Trial was had before a jury, which resulted in a verdict in favor of appellee and against appellant for $1,937.50. Thereafter, upon appellee's having filed a remittitur of $725, judgment was entered for appellee and against the appellant for the sum of $1,212.50, from which judgment appellant here prosecutes its appeal and assigns error.

*Opinion.*—The main contention upon which appellant relies for a reversal of the judgment against it in this case, as set out in its fifth and sixth assignments of error, is to the effect that the contract sued upon was made to enable plaintiff to engage in gambling transactions, and in furtherance of wagers and future transactions in grain, with no intention of actual delivery of the grain or other commodities, and is therefore null and void and against public policy and morals. Upon this issue the jury trying the case found against the contention of appellant, and we do not feel warranted in disturbing its verdict, as in our opinion the evidence, as shown by the record, upon this issue sustains the finding of the jury. Appellee testified that in all his transactions with the Donovan Commission Company the understanding was that the grain was to be actually delivered if demanded; that he contemplated taking the grain, and asked parties here how much they would take, etc. Charles B. Lightner, witness for appellee, testified "that actual delivery was always contemplated by the Donovan Commission Company, and that it always stood ready to accept the delivery of any commodity it purchased," the law being that if appellee, through the Donovan Commission Company, made sale of grains with the agreement and understanding that he should deliver the grains, and that in his purchase of such grains the same were to be delivered, such transactions are legal, whether the com-

modities were ever in fact delivered or not. Seeligson v. Lewis & Williams, 65 Texas, 220; Marx v. Elsworth, 2 Posey, U. C., 86.

We are further of the opinion that it was the duty of appellant under its contract with appellee, as shown by the record in this case, to have furnished the appellee with correct Chicago reports on wheat, oats and corn on the dates mentioned by appellee in his petition, and that the objection, as set out under appellant's first and second assignments of error, to the third and fourth paragraphs of the court's charge, to the effect that said charge complained of erroneously placed upon appellant the absolute duty of furnishing appellee correct market reports, and relieved appellee altogether of the duty of establishing the negligence of appellant, is not well taken. Appellant having contracted to furnish appellee correct reports, its failure to do so constituted a breach of its contract, and there is no question involved of whether or not it exercised ordinary care in attempting the discharge of its duty under said contract.

Appellant under its third assignment of error complains of the action of the court in instructing the jury in paragraph six of its charge as follows: "If you find for plaintiff you will assess his damages at the difference between the amount plaintiff paid for the wheat, oats and corn to fill his contract on February 3, 1903, and the lowest amount he could have purchased said wheat, corn and oats between February 3, 1903, and May 31, 1903, not lower, however, than 32⅝ for oats, 43⅛ for corn and 74⅜ for wheat per bushel, the total amount, if you find any amount, not to exceed the amount prayed for in plaintiff's second amended original petition;" and contends that appellee having sold grain as alleged for future delivery at Chicago at a definite figure, and the telegram complained of having induced appellee to purchase grain at a greater price than that at which he had contracted to sell it, the measure of damage, if any, is the difference between the amount paid for the grain growing out of the erroneous information and the price at which appellee had contracted to sell the grain. We are of the opinion that neither the charge of the court complained of, nor the contention of appellant as above set out, correctly states the true measure of damages applicable in this case, and are of the opinion that the true measure of appellee's damage is the difference between the erroneous prices quoted appellee by appellant in its telegram on February 3, 1903, and the correct or real prices on that date on the Chicago market, which appellant had contracted to furnish, which measure applied to the facts in this case, would entitle appellee to a verdict here estimated at $1,362.50. We do not, however, think that the error committed by the court in so charging the jury, as complained of in this assignment, warrants the reversal of this case, it appearing from the record that after the return of the verdict of the jury in appellee's favor for the sum of $1,937.50, and before the rendition of the judgment thereon, appellee filed a remittitur for the sum of $725, and judgment was rendered in his favor for the sum of $1,212.50, being a less amount than that which we consider he was entitled to have recovered under a charge correctly instructing the jury as to the true measure of damages. Revised Statutes, article 1353; Nunnally v. Taliaferro, 82 Texas, 286; Farmers' & M. Nat'l Bank v. Taylor, 91 Texas, 78; Houston & T. C. Ry. v. Hill, 63

Texas, 388; York v. Gregg, 9 Texas, 96; Illies v. Diercks, 16 Texas, 251. Considering the above cited authorities and the holding above set out, we are further of the opinion that appellant's fourth and seventh assignments of error are not well taken, and the same are here disallowed and overruled.

We are further of the opinion that the court did not err in refusing to allow the appellant, over the objection of the appellee, to read in evidence the opinion of the United States Circuit Court of Appeals, as referred to in appellant's bill of exception No. 6, the decision offered in evidence simply appearing in a book known as the Federal Reporter.

Finding no reversible error assigned by appellant or shown by the record in this case, we conclude that the judgment of the court below should be in all things affirmed, and it is accordingly so ordered.

*Affirmed.*

Writ of error refused: