## BOWER v. LIVELY. (No. 7287.)

Court of Civil Appeals of Texas. Austin.
Oct. 31, 1928.

Joe Moore, of Houston, for appellant.

Claude C. Westerfeld and Currie McCutcheon, both of Dallas, for appellee.

BLAIR, J. Appellee sued C. L. Bower and appellant, Thruston Bower, individually and as a copartnership operating automobiles for hire as a common carrier, under the firm name of Bower Auto Rent Company, for damages for personal injuries alleged to have been sustained when their automobile, in which appellee was riding as a passenger for hire was run off the road, overturned, and wrecked. The negligence alleged was predicated on the doctrine of res ipso loquitur. At the conclusion of the evidence, the jury were instructed (a) that the evidence established negligence, and (b) to "consider only the questions whether or not the plaintiff was injured in the wreck; if he was, the extent of his injuries, if any, and the amount of damages, ·if any, he sustained thereby." Proximate cause was defined, the rule or measure of damages given, and the jury were asked to find what amount of damages, if paid now, would compensate appellee for his injuries shown by a preponderance of the evidence to have "been directly and proximately caused by the wreck involved in this lawsuit." The jury answered that $11,000 was the amount of the damages suffered, and judgment was rendered for appellee for that sum, from which judgment this appeal has been perfected.

As a preliminary, we will state that this case is a companion case to the case of Bower Auto Rent Co. v. Young (Tex. Civ. App.) 274 S. W. 295, in which a writ of error was refused by the Supreme Court, and wherein several of the questions here involved were decided against the contentions here made by appellant.

Also, as a preliminary, we overrule appellee's motion to strike out the bill of exception and statement of facts herein, because not filed in time, as not being supported by the record.

■ The error presented by appellant's fifth proposition requires a reversal of this case, and we therefore pretermit, except as directions on another trial of the case, any discussion of appellant's other propositions or assignments of error, for the reason that the alleged errors may not occur on another trial. The fifth proposition, which we sustain, reads as follows:

"Where a plaintiff exhibits to a jury his eyeball by raising the eyelid and rolling the ball around, said eyelid being customarily closed and the jury not being able to see the eyeball, he thereby waives the inviolability of his person, and it is error to refuse to require him to submit before the jury to·an examination by physicians selected by the defendant."

Appellee testified that his right eye had remained permanently closed since and as the result of injuries sustained in the accident. A photograph of himself showing his right eye to be closed was introduced in evidence. This he testified represented the permanent condition of his eye since and as the result of injuries received in the accident. In this connection appellee testified as follows:

"I can see out of this right eye when I take my hand and raise this lid, but I see two of everything. I can shut this eye and turn way around this way and now I can see you but I can't move that ball one way or the other. I can't move my right eyeball."

Another photograph of appellee was introduced, showing him lifting the upper eyelid of his right eye with his fingers, and in order that the eyeball might be seen. He was then directed by his counsel to raise with his fingers the lid of the injured eye in the manner shown in the photograph, and to exhibit the eyeball to the inspection of the jury, which he did, and while doing so testified as follows:

"The eye is there but I can't see out of it at all—I mean I see double when I raise this lid. * * * The lid of the right eye comes over the eyeball and completely covers it, and I can't raise it at all, see here."

At the conclusion of appellee's evidence, and when he had rested his case, appellant filed two motions to require appellee to submit his person and his alleged injured eye which he had so exhibited to the inspection of the jury to an examination by experts or physicians selected by appellant. The court overruled the motions because, "the plaintiff having refused to have said examination of his eye by experts, the court is of the opinion that said examination should not be granted." In other words, the court simply applied the rule of 'inviolability of the person in refusing to grant the motions. This was clearly error, because appellee waived that rule when he offered his eye and eyelid for the inspection of the jury.

In the case of Galveston, H. & S. A. Ry. Co. v. Chojnacky (Tex. Civ. App.) 163 S. W. 1011, it was held as follows:

"The most effective way to contradict the testimony of appellee was to have an examination of his eyes by experts, who could test the extent of his vision. But that examination could not, at any time, be demanded by appellant unless appellee permitted an inspection of his eyes by the jury. The moment, however, that he submitted his eyes for examination to the jury, he doffed the armor placed on his person by the hand of the law, and was the subject of examination of experts."

Appellee contends, however, that we should not follow this case, for the following reasons:

(1) That it declares an erroneous proposition of law, and should be overruled. We do not sustain the contention. The decision

is supported on principle by the Supreme Court decisions therein cited, and is therefore the settled law or policy of this state with reference to waiver of the inviolability of the person rule.

(2) That the bill of exception should at least show what appellant expected to prove by the experts. If this were the rule, testimony of this character could never be obtained. Of necessity, the testimony of the experts must depend on an examination of appellee's eye. Therefore his refusal to submit to such an examination unquestionably cuts off the expert's only source of information, which information, as held in the case above quoted, is "the most effective way of contradicting the testimony of appellee."

(3) That there is a substantial difference in the facts of this case and the Chojnacky Case, supra, in this, to wit: That plaintiff in that case removed, at the request of the jury, dark eye glasses he had worn through the trial, and he exhibited his eyes to the inspection and examination of the jury; whereas in this case appellee did not wear glasses, and his eye was a patent injury and obvious to any one, and the jury did not examine the eye or injury thereto. The contention is not sustained. The exhibit of the person here for inspection of the jury is decidedly more pronounced than that made in the Chojnacky Case. There the plaintiff simply removed dark glasses in order that the jury might see his eyes. In this case appellee not only exhibited his injured eye, but lifted and manipulated his eyelid, and exhibited his eyeball for inspection of the jury, calling their attention at the time to the fact that it was only when he so manipulated the eyelid that he could see at all, and that, when he so lifted the eyelid, his vision was so injured that he saw double, or two objects.

■ (4) That, under rule 62a, the case should be affirmed, because appellee has offered to file a remittitur reducing the judgment from $11,000 to $5,000; that, if the suggestion is followed and a remittitur permitted, then the verdict of the jury for $5,000 is fully sustained by reason of the other injuries received in the wreck; and that therefore, under rule 62a, the error of the court in refusing to require appellee to have his eye examined by physicians of appellant's choice was harmless. We do not sustain the contention. As we interpret this proposition, appellee simply seeks to have us consider, because of the error committed in refusing to require appellee to submit his eye to experts for examination, the injury to the eye and the resulting damages herein sued for as a mere improper measure or element of damages, which the jury were not entitled to consider in arriving at the amount of their verdict. This proposition might be well taken if this court had any way of determining whether the remittitur covered the amount of damages the jury may have allowed for the in-

jury to appellee's eye. This we cannot possibly ascertain, except by mere guess work, or by fixing arbitrarily $6,000 as the exact amount of damages which appellee sustained as the result of the injuries to his eye. The following authorities settle the question that a remittitur will cure an error occasioned by the jury considering an improper element of damage, or damages for any specific injury alleged only in cases where the measure of damage is a matter of law. Thomas v. Womack, 13 Tex. 580; Hughes v. Brooks, 36 Tex. 379; Hardeman v. Morgan, 48 Tex. 103; Hoskins v. Huling, 2 Wilson, Civ. Cas. Ct. App. § 156; T. & N. O. R. Co. v. White, 55 Tex. 251; Heidenheimer v. Schlett, 63 Tex. 394; Gulf, C. & S. F. Ry. Co. v. Redeker, 75 Tex. 310, 12 S. W. 855, 16 Am. St. Rep. 887. Or, as is held by the following authorities, a remittitur cannot be filed where the error of excessiveness is not ascertainable by fixed methods of calculation. Gulf, C. & S. Ry. Co. v. Coon, 69 Tex. 730, 7 S. W. 492; Nunnally v. Taliaferro, 82 Tex. 289, 18 S. W. 149; International & G. N. Ry. Co. v. Wilkes, 68 Tex. 617, 5 S. W. 491, 2 Am. St. Rep. 515; Missouri, K. & T. Ry. Co. v. Perry, 8 Tex. Civ. App. 78, 27 S. W. 496; Lang v. Dougherty, 74 Tex. 226, 12 S. W. 29; Kaufman v. Armstrong, 74 Tex. 65, 11 S. W. 1048; Gulf, C. & S. F. Ry. Co. v. Redeker, 75 Tex. 310, 12 S. W. 855, 16 Am. St. Rep. 887; General Acc. Fire & Life Ins. Corporation v. Bundren (Tex. Com. App.) 283 S. W. 491.

Appellee merely cites in this connection cases in which appellate courts have sustained, as not being excessive, jury's verdicts from $3,000 to $6,000 for loss of an eye. There are also cases in which $8,000 and even $12,500 for loss of an eye have been held not excessive. So these cases furnish no fixed method by which we can ascertain the amount of damages the jury should have allowed appellee for the loss of his eye; nor where the measure of damages is fixed as a matter of law, and therefore we cannot say whether the remittitur of $6,000 would necessarily cover the amount of damages the jury allowed appellee for the injuries to his eye in this case.

While we are of the opinion that the evidence as adduced on this trial warranted the trial court in instructing the jury that negligence was established as a matter of law, still we pretermit a discussion of the evidence, as it may be different, or other evidence may be offered on another trial on this issue. The same is true with reference to the instructions given to the jury, and with reference to the authority of the judge who tried the case by transfer under the recent practice act. The regular judge may sit at another trial.

For the reasons above stated, we reverse the judgment and remand the cause for another trial.

Reversed and remanded.